UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NELSON GONZALEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 23-CV-14281 |
| v. | ) |
| | ) |
| REYNALDO GUEVARA, et al., | ) Magistrate Judge Jeffrey T. Gilbert |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**ORDER**

The Court assumes familiarity with its prior Memorandum Opinion and Order [ECF No. 117] ("MOO") regarding Plaintiff's Motion to Compel Cook County State's Attorney's Office to Produce Unredacted Documents [ECF No. 106] ("Motion"). As relevant here, the Motion seeks to compel third party subpoena respondent Cook County State's Attorney's Office ("CCSAO" or "Third Party Respondent") to produce certain documents CCSAO is withholding or has redacted based on the assertion of a deliberative process privilege. Motion [ECF No. 106] at 9-12. The documents were submitted to the Court for *in camera* review and the Court subsequentely ordered CCSAO to provide a revised privilege log and declaration in support of CCSAO's assertion of the deliberative process privilege. CCSAO filed a new declaration which included updated privilege log entries for the documents at issue. *See* Declaration of Prathima Yeddanapudi Offered as Amendment to Declaration of Lyle K. Henretty [Docket #110-9] [ECF No. 119] ("Yeddanapudi Declaration").

1

The Court previously addressed and incorporates by reference the legal standard applicable to CCSAO's assertion of the deliberative process privilege. *See* MOO [ECF No. 117]. In the Yeddanapudi Declaration, CCSAO explains that it asserts "deliberative process privilege as well as the work-product privilege over materials related to the CCSAO decisions concerning litigation generally, unless there is a specific reason not to do so" or evidence of a waiver. Yeddanapudi Declaration [ECF No. 119] at ¶ 10. This statement improperly inverts CCSAO's burden to establish, in the first instance, the deliberative process privilege applies to the withheld or redacted documents. "The government bears the burden of proving what deliberative process was involved and what role the document played in that process." *King v. I.R.S.*, 684 F.2d 517, 519 (7th Cir. 1982). Moreover, "because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." *See Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (citing *United States v. Nixon*, 418 U.S. 683, 710, (1974)). CCSAO's approach, as described in the Yeddanapudi Declaration, does not appear to make any effort to narrowly construe the application of the deliberative process privilege but rather establishes a default position that generally treats all materials related to CCSAO litigation decisions as subject to the privilege. This approach is improper under the law of the deliberative process privilege as it has been applied by federal courts.

"[I]n order to qualify for the privilege, a document must be both predecisional in the sense that it is 'actually [a]ntecedent to the adoption of an agency policy,' and deliberative in the sense that it is 'actually ... related to the process by which policies are formulated.'" *Enviro Tech Intern., Inc. v. U.S. E.P.A.*, 371 F.3d 370, 375 (7th Cir. 2004). In considering the application of the deliberative process privilege to prosecuting entities like the CCSAO, courts have described the prosecutorial decision to be made as whether to bring charges and prosecute, or, in a post-conviction context, whether to vacate convictions or oppose petitions for Certificates of Innocence. *See Hill v. City of Chicago*, 2015 WL 12844948, at *3 (N.D. Ill. May 28, 2015) ("the CCSAO is entitled to invoke the deliberative process privilege *with respect to the particular decision to approve felony charges* on July 2, 2011") (emphasis added); *Walls v. Vasselli*, 2022 WL 1004248, at *3 (N.D. Ill. Apr. 4, 2022) ("Other courts have likewise held that the deliberative process privilege can apply to memoranda, notes, and other documents created *while evaluating whether to prosecute an individual defendant*.") (emphasis added) (internal citations omitted); *Saunders v. City of Chicago*, 2015 WL 4765424, at *10–12 (N.D. Ill. Aug. 12, 2015) (referring to the potentially privileged documents reflecting "prosecutorial decisions" as "documents from the reinvestigation files . . . that reveal deliberations, recommendations, advice, debate, opinions, or analysis regarding positions the State's Attorney should take in relation to the motions to vacate the convictions and the petitions for Certificates of Innocence, and whether to *nolle prosequi* the charges").

This is also how the prosecutorial decisions are described in the authorities cited by CCSAO in support of its invocation of the deliberative process privilege in this case. *See DeLeon-Reyes v. Guevara*, 2021 WL 3109662, at *3–5 (N.D. Ill. July 22, 2021) (CCSAO met its *prima facie* burden by submitting a declaration claiming the deliberative process privilege "over 'testimony and materials related to the decisions made by the CCSAO to drop charges and not to retry Mr. Solache and Mr. Reyes'" and "over 'testimony and materials related to the CCSAO's position on the Plaintiffs' petitions for [Certificates of Innocence]'"); *Almodovar v. Guevara, et al./Negron v. Guevara, et al.*, No. 18 CV 2701) (N.D. Ill. 2024) at Dkt. 161 (CCSAO affidavit "claims that the deliberative process privilege applies to testimony about the CCSAO's decision to drop the charges against plaintiffs and the CCSAO's position on plaintiffs' petitions for COIs") (concluding "the privilege bars defendants from asking [] about the discussions and deliberations within the CCSAO that preceded the decisions to dismiss the charges against plaintiffs and not to oppose their petitions for COIs. But the deliberative process privilege 'typically does not justify the withholding of purely factual material.'"); *Fulton v. City of Chicago*, No. 17 CV 8696 (N.D. Ill. 2020) at Dkt. 293 (identifying decisions potentially subject to deliberative process privilege as "the motion to seek a retrial and then to dismiss and then a Certificate of Innocence do not oppose it" (*sic*)).

The Yeddanapudi Declaration, by contrast, fails to specifically identify the prosecutorial decision(s) that provide the basis for CCSAO's deliberative process privilege claim over the withheld or redacted documents. While the Declaration says

4

the documents contain notes "taken prior to and contemporaneously with the prosecution of Plaintiff Nelson Gonzalez as well as post-conviction proceedings," CCSAO does not say those notes reveal any pre-decisional analysis of whether to prosecute Mr. Gonzalez or whether to oppose his post-conviction relief. The mere fact that the notes were made before or during trial, or during post-conviction proceedings, does not necessarily mean the notes (whether handwritten or typed) reflect the type of deliberative and pre-decisional process potentially subject to the privilege. Similarly, the Declaration's description of the documents as including "hand-written synopses, notes on witnesses (including impressions), notes regarding what occurred during the trial and post-conviction, statement/impressions about the case, and other asserted notes" some of which "include underlying (*sic*), starring, checking off, or other marks used to highlight specific information" falls short of identifying the specific prosecutorial decision implicated by those synopses or notes. [ECF No. 119] at ¶¶ 7-8.

Moreover, CCSAO does not provide any cases or authority supporting its apparent view that the deliberative process privilege generally protects litigation or trial strategy decisions, as may be implicated by the notes in the withheld and redacted documents here, from disclosure. *See Martinez v. Guevara*, No. 23-cv-1741 (N.D. Ill. 2024) (Finnegan, J.) at Dkt. 203 p. 7-9 (noting CCSAO did not identify "a case in which a court has applied the privilege to a prosecutor's deliberations over trial preparation and strategy decisions -- as opposed to pre-decisional deliberations over whether to seek an indictment or vacate a conviction."). Other courts have

5

rejected CCSAO's assertions of deliberative process privilege over trial notes, trial strategy and trial preparation materials where CCSAO used language that closely mirrors the document descriptions in both the Henretty Declaration (submitted with CCSAO's initial response brief, *see* [ECF No. 110-9]) and the Yeddanapudi Declaration. *Compare* Yeddanapudi Declaration [ECF No. 119] at ¶¶ 7-8 (describing withheld documents as "ASA notes" including "hand-written synopses, notes on witnesses (including impressions), notes regarding what occurred during the trial and post-conviction, statement/impressions about the case, and other assorted notes") with *Cruz v. Guevara*, 2024 WL 5442646, at *1–2 (N.D. Ill. May 17, 2024) (overruling CCSAO's deliberative process privilege objection as to "ASA Notes and the ASA Trial Preparation Materials" described as "notes taken prior to and contemporaneously with the prosecution of Plaintiff" including "hand-written synopses, notes on witnesses (including impressions), notes regarding what occurred during the trial, a draft opening statement, what appears to be a draft closing statement/impression about the case, a draft witness list, and other assorted notes"); *Martinez*, No. 23-cv-1741, at Dkt. 203 p. 7-9 (rejecting CCSAO's assertion of deliberative process privilege over "withheld ASA notes" including "(1) "ASA handwritten notes from trial that convey the thought process behind the trial"; (2) "ASA case notes written throughout the actual preparation of the case leading up to trial which convey the thought process behind the way the prosecutor presented the information he had"; and (3) "drafts of trial preparation materials that convey the planning of arguing the State's positions, including internal worksheets.").

6

For similar reasons, the updated privilege log entries for the withheld documents contained within the Yeddanapudi Declaration do not suffice to satisfy CCSAO's *prima facie* burden to establish application of the deliberative process privilege. CCSAO describes certain "pre-trial" documents as pertaining to trial strategy decisions, such as potential objections to evidence, about witnesses, or analysis of a motion in limine.[1] As discussed in *Cruz*, the CCSAO's "description sounds much more like a characterization of attorney work-product than the pre-decisional or deliberative internal discussions of an agency" and "[n]othing about the CCSAO's description can lead the Court to conclude that disclosure would undermine the agencys decisional functions or expose its pre-decisional or deliberative processes in any way that would trigger protection of the deliberative process privilege." *Id.; see also Walls v. Vasselli*, 2022 WL 1004248, at *4 (N.D. Ill. Apr. 4, 2022) (Durkin, J.) (CCSAO affidavit offered in support of assertion of deliberative process privilege over document "is very conclusory, and much of it directed toward the elements of the work product privilege, which the Court has already rejected"); *Martinez*, No. 23-cv-1741 (N.D. Ill. 2024) at Dkt. 203 p. 7-9.[2]

---

[1] *See* Yeddanapudi Declaration [ECF No. 119] at ¶ 9 (CCSAO_00003 (potential objections to DNA testing of evidence); CCSAO_00637 (trial strategy on witness questioning, palmprint evidence, and witnesses); CCSAO_000973 (handwritten notes analyzing motion in limine); CCSAO_001000 and CCSAO_001057 (handwritten notes about investigation of witnesses); CCSAO_001389 (handwritten notes about witnesses and testimony needed for trial).

[2] Moreover, while the Yeddanapudi Declaration continues to invoke work product protection over these documents, the Court already determined that CCSAO failed to respond to Plaintiff's cited authority establishing that work product protections are unavailable to block production of CCSAO's documents in this context. *See* MOO [ECF No. 117] at n.1 (also citing *Williams v. City of Chicago*, 2023 WL 6213716, at *3 (N.D. Ill. Sept. 25, 2023) (declining "to stray from the clear line of cases holding that 'the work product doctrine does not protect a prosecutor's files in a subsequent, related civil action.'"); *Cruz*, 2024 WL 5442646, at *3 (N.D.

7

The Yeddanapudi Declaration also describes certain documents as including "handwritten synopses" and "notes regarding what occurred during the trial and post-conviction." [ECF No. 119] at ¶ 8. Based on the Court's *in camera* review, however, these documents do not reflect any pre-decisional discussions or deliberative processes that could appropriately be withheld under the privilege. *See id*. at ¶ 9 (CCSAO_000708, CCSAO_000811, CCSAO_000973 (containing what appears to be a final recommendation for future post-conviction action rather than pre-decisional deliberations about whether or not to take that action); CCSAO_001561 (scheduling-related communication that does not describe any pre-decisional strategy regarding post-conviction relief); CCSAO_001692-1701 (handwritten notes of "what transpired in trial").[3] Moreover, courts have rejected the assertion of deliberative process privilege over documents that merely contain "synopses" of facts or summaries of proceedings rather than deliberative discussions of a pre-decisional nature. *See Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 916–17 (N.D. Ill. 2015) ("The vast

---

Ill. May 17, 2024) ("because the CCSAO is not a party to the case, and the materials in question therefore were not prepared by or for a party in the case . . . the CCSAO cannot claim the work-product doctrine to bar production of the ASA Notes and the ASA Trial Preparation Materials").

[3] With respect to CCSAO_001692-1701, the Court's *in camera* review did not reveal any clearly deliberative, pre-decisional discussions in this document and CCSAO's log entry acknowledges the document contains a summary of "what transpired in trial." Nor did CCSAO make an effort to identify specific comments or analysis within this document that it contends reflect a deliberative process related to a post-conviction prosecutorial decision; instead, CCSAO seeks to withhold all of the notes in their entirety, including portions that CCSAO concedes are summaries of "what transpired at trial." *See Martinez*, No. 23-cv-1741 (N.D. Ill. 2024) at Dkt. 203 p. 8 (as "the documents do not reveal the author's own deliberations or deliberations with others about trial decisions, the Court finds no basis for shielding them under the deliberative process privilege even assuming the privilege extends to such [trial strategy] decisions.").

8

majority of each page of each document does not reflect the author's impressions, theories, hypotheses, recommendations for future action or how an issue might be resolved. There is no assessment of past errors or opinions on what should have been done. There are no communications which if disclosed would temper the candor of government staff " 'with a concern for appearances ... to the detriment of the decision-making process.' " In the main, the documents were made after the State Court murder trial . . . and, in the main, are merely factual narratives or synopses of what was recorded in police reports, pretrial motions, or trial transcripts.") (internal citations omitted).[4]

Thus, the Court finds CCSAO has failed to establish the *prima facie* showing required for assertion of the deliberative process privilege over the withheld and redacted documents identified in its privilege log.

For all the above reasons, Plaintiff's Motion to Compel Cook County State's Attorney's Office to Produce Unredacted Documents [ECF No. 106] is granted in part and Third Party Respondent CCSAO is ordered to produce the documents withheld or redacted based on a deliberative process privilege objection.

---

[4] CCSAO_000640, CCSAO_000642 is a document titled "Synopsis of Facts" that includes a redacted witness and case evaluation and which is described in CCSAO's revised privilege log entry as a "post-conviction" document. Based on the description that this is a post-conviction document as well as the Court's *in camera* review, it is not apparent how a discussion about trial witnesses could reflect any pre-decisional, deliberative process about a prosecutorial decision.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   April 15, 2025