**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NELSON GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-CV-14281 |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nelson Gonzalez ("Plaintiff" or "Gonzalez") claims that Chicago Police Officer Reynaldo Guevara and four other police officers (collectively, the "Defendant Officers") wrongfully procured his 1993 murder conviction in connection with the July 1993 death of Jose Mendoza. First Amended Complaint [ECF No. 37]. Plaintiff was sentenced to 45 years in prison for that alleged crime, including 23 years he served in the custody of the Illinois Department of Corrections. [*Id.*] Plaintiff was paroled from prison on October 16, 2016, but was ultimately exonerated of Mendoza's murder and issued a certificate of innocence in 2023. [*Id.*] The Court assumes familiarity with its prior discovery opinions in this case, *see* [ECF Nos. 117, 121].

Currently before the Court is Plaintiff's Motion to Quash Defendants' Subpoena Seeking Plaintiff's Recorded Calls [ECF No. 135] ("Motion"). Plaintiff asks the Court to quash Defendants' subpoena to the Illinois Department of Corrections ("IDOC" or "Third Party Respondent") seeking production of certain recordings of

1

Plaintiff's telephone calls with family members and his attorney while he was incarcerated.

## I.    LEGAL STANDARD

A district court must quash or modify a subpoena that "(1) fails to allow a reasonable time for compliance, (2) requires a nonparty to travel more than 100 miles, (3) 'requires disclosure of privileged or other protected matter, if no exception or waiver applies,' or (4) 'subjects a person to undue burden.'" FED.R.CIV.P. 45(c)(3)(A)). Yet before the court may exercise its authority under Rule 45(c), a party must have standing to move to quash the subpoena in question. *See Bishop v. White*, 2020 WL 6149567, at *3 (N.D. Ill. Oct. 20, 2020); *Russell v. City of Chicago*, 2022 WL 294765, at *1–2 (N.D. Ill. Feb. 1, 2022) ("Before the Court may exercise its authority under Rule 45(c) it must address the threshold issue of standing.").

Ordinarily, for a party to have standing to quash a subpoena issued to a nonparty, the subpoena must implicate that person's "legitimate interests." *See United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). The movant must have either a claim of privilege, or privacy interests upon which the subpoena will impinge, in order to have standing. *Simon v. Nw. Univ.*, 2017 WL 66818, at *2 (N.D. Ill. 2017). Although Defendants do not appear to contest Plaintiff's standing here, Plaintiff nevertheless must establish that he has standing to move to quash Defendants' subpoena to third-party CCDOC. *Bishop*, 2020 WL 6149567, at *3. Even a minimal privacy interest has been found sufficient to confer standing. *Russell*, 2022 WL 294765, at *1–2 (citing *DeLeon-Reyes v. Guevara*, 2020 WL 7059444, at *2 (N.D. Ill. Dec. 2, 2020)).

An incarcerated person's privacy interest in recordings of their phone calls from prison is reduced but not non-existent. *Velez v. City of Chicago*, 2021 WL 3231726, at \*3 (N.D. Ill. July 29, 2021) (plaintiff knew, or should have known, that his calls were being monitored or recorded, so "his claimed privacy interest is ... greatly minimized."); *Bishop*, 2020 WL 6149567, at \*4 ("Plaintiff is entitled to some degree of privacy in the personal content of those conversations, even though he knew others could listen to, and record, those conversations because he was in jail."). Courts have held that "an incarcerated individual possesses a sufficient privacy interest in the recordings of her phone calls, such that she has standing to quash a subpoena for those recordings." *Russell*, 2022 WL 294765, at \*1–2 (quoting *DeLeon-Reyes*, 2020 WL 7059444, at \*2); *see also Bishop*, 2020 WL 6149567, at \*3. "While inmates would reasonably expect that their phone calls could be accessed by prison officials, they would not reasonably expect that the details of their recorded phone calls would be handed over to civil litigants. Thus, Plaintiff has demonstrated the minimal privacy interests necessary for standing." *Pursley v. City of Rockford*, 2020 WL 1433827, at \*2 (N.D. Ill. Mar. 24, 2020), *opinion adopted*, 2020 WL 4815946 (N.D. Ill. Aug. 19, 2020). In the Court's view, it is reasonable to believe the 250 calls with Plaintiff's mother, sister, son, and now attorney encompassing 100 hours of conversations would include discussion of private matters not relevant to the issues in this case even if they also could include relevant information as Defendants maintain. Accordingly, Plaintiff has established at least a minimal privacy interest in the telephone recordings Defendants seek and has standing to quash the subpoena.

## II.    ANALYSIS

### a. Relevance of Plaintiff's Recorded Calls Weighed Against His Privacy Interests.

"Once standing is established, courts weigh 'the privacy interests of the person seeking to quash the subpoena against the relevance and benefit of the information sought.'" *Russell*, 2022 WL 294765, at *2 (quoting *Rodriguez v. City of Chicago*, 2021 WL 2206164, at *1 (N.D. Ill. June 1, 2021)); *In re Watts Coordinated Pretrial Proc.*, 2024 WL 3470596, at *4 (N.D. Ill. July 19, 2024); *Bishop*, 2020 WL 6149567, at *4 ("Where the subpoena is directed to a third-party but implicates a different individual's privacy interests, courts weigh the relevance of the information sought against the strength of that privacy interest rather than conduct the familiar assessment of how burdensome production would be on the third party recipient of the subpoena in terms of time and volume of information."). "The scope of material that may be secured by Subpoena is as broad as that permitted under the discovery rules," and consists of evidence that is relevant to any party's claim or defense and proportional to the needs of the case. *Bishop*, 2020 WL 6149567, at *4 (citing and quoting *Coleman v. City of Peoria*, 2016 WL 3974005, at *3 (C.D. Ill. 2016) and FED.R.CIV.P. 26(b)(1)); *DeLeon-Reyes*, 2020 WL 3050230, at *3 ("the relevance and proportionality limits in Rule 26 ... apply with equal force to nonparty discovery under Rule 45"). As with most discovery matters, the decision about whether to quash a subpoena rests squarely within the Court's discretion. *Bishop*, 2020 WL 6149567, at *4 (citing *Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008)); *In re Watts Coordinated*

*Pretrial Proc.*, 2024 WL 3470596, at *4 (citing *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017)).

Courts in this district acknowledge that incarcerated persons have a lesser privacy interest in their recorded calls because they know their calls are being monitored and recorded unlike calls involving people who are not incarcerated. *See*, *e.g.*, *Russell*, 2022 WL 294765, at *2 ("Russell's privacy interests in the calls that he knew were being monitored and recorded are minimal."); *Rodriguez*, 2021 WL 2206164, at *1–3 (" . . . the privacy burden is relatively light – incarcerated individuals are aware their calls may be recorded and do not have the same privacy expectations in their phone recordings as they would outside a jail setting."); *Coleman*, 2016 WL 3974005, at *4 ("The impact on their privacy interests is less than a private citizen making phone calls at home because Coleman and Holland knew that the calls were recorded and could be heard by some other individuals."). Defendants note though that Plaintiff does not provide any specific reasons why his calls with his family members (or his attorney) are entitled to any heightened protection or particularly sensitive. Response [ECF No. 141] at 9. *See Velez*, 2021 WL 3231726, at *3–4 ("Moreover, unlike the cases he relies upon, plaintiff has made no specific showing whatsoever as to what he asserts is the "intimacy" or "sensitivity" of the phone calls at issue."). Nevertheless, "[a]lthough Plaintiff's privacy interest may be minimal – or at least less than that of a private citizen making calls from home without any sense the calls are being monitored by third parties – it is not nonexistent." *Bishop*, 2020 WL 6149567, at *4.

5

The next step is to balance Plaintiff's privacy interest in the recorded calls against the relevance of the information sought. "Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it 'has any tendency' to make a fact of consequence 'more or less probable than it would be without the evidence.' Fed. R. Evid. 401(a)-(b). In determining the scope of discovery under Rule 26, relevance is construed broadly and is 'not limited to issues raised by the pleadings[.]' " *DeLeon-Reyes*, 2020 WL 7059444, at *3 (internal citations omitted). "The evidence presented by a party seeking prison phone records need not be extensive." *Id.* (citing *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 931 (7th Cir. 2004)). The party seeking the recordings, however, "must offer more than mere speculation that the recordings could house relevant evidence." *DeLeon-Reyes*, 2020 WL 7059444, at *5; *Bishop*, 2020 WL 6149567, at *6 ("There must be some basis, beyond mere supposition, that Plaintiff used the telephone to communicate . . . before Defendants can be given license to rummage through Plaintiff's 8,000 personal telephone calls. The mere possibility that relevant information may be found in Plaintiff's recorded phone calls, which is all Defendants have at this juncture, is insufficient to overcome Plaintiff's privacy interest, especially given the breadth of Defendants' subpoena encompassing 8,000 telephone calls over a four-year period."). Courts in this district have found "two main factors separate a permissible subpoena from one that is overbroad: (1) previously discovered evidence supporting the claim that relevant information will be found in the documents sought, and (2) the 'narrow tailoring of the subpoena to

reflect that discovered evidence.' " *Russell*, 2022 WL 294765, at *2 (internal citations omitted).

Defendants say Plaintiff's telephone calls with his family members while he was incarcerated are likely to be relevant to their defense to the case Plaintiff will put on at trial about the serious damage he suffered from being incarcerated for 23 years, the resulting harm to him and to his relationships with close family members, and even his professed innocence. Defendants' Response to Plaintiff's Motion to Quash Subpoena to IDOC Seeking Recorded Calls [ECF No. 141] ("Response") at 2, 5-6, 10-13. Defendants say this discovery is proportional to the needs of this case in which Plaintiff will be seeking millions of dollars in damages from them for the injury he suffered as a result of being wrongfully convicted. *Id.* at 15. Plaintiff says Defendants should not be permitted to rummage through his private telephone calls with family members recorded more than 20 years after he was convicted based on unsupported speculation that they will contain information that Defendants can use to defend themselves at trial. Motion [ECF No. 135] at 7-10. Plaintiff also says the burden on him and his counsel from having to review hours of telephone calls is disproportionate to any benefit Defendants could hope to garner from production of the recordings. *Id.* at 11-12.

Defendants' original subpoena to IDOC was very broad but it has been narrowed. The June 6, 2025 subpoena served on IDOC by Defendants seeks production of audio recordings of all of Plaintiff's calls from February 28, 2013 to October 24, 2016 to certain individuals at specified phone numbers: 1) Plaintiff's

mother, Blanca Gonzalez; 2) Plaintiff's sister, also named Blanca Gonzalez; 3) Plaintiff's children's mother, Sophie Serrano; 4) Plaintiff's son, Nathan Gonzalez; 5) attorney Kevon Dawals; and 6) Plaintiff's current attorney in this litigation, Jennifer Bonjean. Exhibit A to Motion [ECF No. 135-1]. Plaintiff says calls to these individuals and telephone numbers are identified on a log "IDOC produced to Defendants responsive to an earlier IDOC subpoena . . . [which] purportedly lists all the recorded phone calls IDOC has maintained of Plaintiff" during that period. Motion [ECF No. 135] at 3. Based on this previously produced IDOC call log, Plaintiff says Defendants' subpoena seeks recordings of over 500 calls identified in the call log. Motion [ECF No. 135] at 4, 12.[1]

Defendants, however, narrowed the scope of their subpoena after Plaintiff filed this Motion. Response [ECF No. 141] at 2-4. According to Defendants, although IDOC was instructed not to answer the current subpoena pending a ruling on this Motion, IDOC nevertheless produced "call logs indicating that recorded calls are only available beginning in 2015" through the date of Plaintiff's parole in October 2016. Response [ECF No. 141] at 2-3. Defendants say the log only identifies recorded calls in 2015 and 2016 with four of the six individuals originally identified in the subpoena (Blanca Gonzalez (mother); Blanca Gonzalez (sister); Nathan Gonzalez (son); and

---

[1] Although Plaintiff says he "cannot represent" whether additional calls were made during this time period beyond those listed on the IDOC log, the log appears to reflect the results of IDOC's search for Plaintiff's calls during this time period. Motion [ECF No. 135] at 3. The Exhibit B IDOC call log includes a Call Detail Report for Account Number B63843 (which appears to correspond to Plaintiff), indicates it was generated on October 5, 2024, and the Search Criteria in the log shows the start date for the search as January 1, 2013 and the end date as December 31, 2016. *See* Exhibit B to Motion [ECF No. 135-2] at 11.

Jennifer Bonjean (attorney)) and "do not identify any recorded calls between Plaintiff and either Sophie Serrano or Kavon Dawals." *Id.* at 3; *see also* Exhibit 1 to Response [ECF No. 141-2]. Defendants therefore say Plaintiff's "objection to the production of calls with [Serrano and Dawals] is moot." Response [ECF No. 141] at 3.

Defendants also say they do not seek production of 19 calls that are documented on the log as zero seconds in duration. *Id.* Defendants represent "[a]t this time, Defendants will accept production of these calls in response to the IDOC subpoena" – referring to the recordings of calls from 2015 to 2016 with the four individuals identified above that were listed in the IDOC log – but "do not waive their right to seek additional calls to the extent that it is discovered that any additional calls exist beyond what has been initially identified in the 2015-16 IDOC Call Logs." *Id.* at 3 n.2. Plaintiff does not accept Defendants' representation that the subpoena has been narrowed in scope. Plaintiff points out that Defendants have not amended the subpoena and IDOC has not confirmed it only has calls from 2015-2016 in its possession. Reply [ECF No. 143] at 3.

Although the Court appreciates Plaintiff's concern regarding the scope of the subpoena as originally presented, the Court construes Defendants' current position to, in effect, amend their subpoena to seek only the 250 calls from 2015-2016 with the four individuals identified on the IDOC log. Accordingly, the Court denies as moot Plaintiff's objections to the production of recordings of Plaintiff's calls with Sophie Serrano or Kavon Dawals because the IDOC call log provided by Defendants does not

identify any recorded calls with these individuals and Defendants say they are therefore not seeking any such recordings.

Turning to the remaining 250 recorded calls from 2015 and 2016 that exceed zero seconds in duration, the Court first addresses Defendants' request for calls with Plaintiff's son, Nathan Gonzalez. Defendants argue these calls are relevant because Plaintiff initially identified Nathan in Rule 26 disclosures as having "information about Plaintiff's innocence and his damages." [ECF No. 143-3] at 9. While Defendants acknowledge that Nathan was later removed from Plaintiff's amended Rule 26 disclosures, they otherwise ignore the amended disclosures, instead simply stating Nathan was "identified as potential witness[] with relevant knowledge" to justify the relevance of his recorded calls. Response [ECF No. 141] at 5, 11. Plaintiff responds that Nathan was removed from the list of potential witnesses in response to Defendants' request that Plaintiff narrow his disclosures to remove duplicative family witnesses who would not likely be called at trial. Reply [ECF No. 143] at 3.[2]

Given that Nathan Gonzalez has been removed from Plaintiff's Rule 26 disclosures, Plaintiff is, in essence, now representing that Nathan will likely not be called as a witness at trial. Beyond pointing to the initial (and now amended) disclosures, Defendants do not provide any other support for their position that calls with Nathan are likely to contain relevant information that would not also be

---

[2] *See* Exhibit B to Reply [ECF No. 143-2] (pre-subpoena correspondence in which Defendants asked if the eleven family member witnesses identified in Plaintiff's Rule 26 disclosures "can be pared down to only those witnesses who Plaintiff is likely to call at trial to avoid unnecessary depositions.").

contained in telephone calls with, for example, his mother and sister.[3] *See Rodriguez*, 2021 WL 2206164 at *2 (granting motion to quash subpoena for phone call with individual who was not disclosed as a potential witness by Plaintiff and who otherwise had only provided a character affidavit in an unrelated immigration proceeding). Defendants also do not address the potential duplicative nature of information that might be obtained from Nathan's calls as compared to information that might be obtained from recorded calls with the other members of Plaintiff's family who remain identified as potential witnesses in his amended disclosures. For all these reasons, the Court finds Defendants have not provided a non-speculative basis for their assertion that calls with Nathan Gonzalez are likely to contain relevant and non-duplicative information that is proportional to the needs of the case.

With respect to Plaintiff's current attorney, Jennifer Bonjean, Defendants assert "undoubtably, conversations Plaintiff had with . . . his attorney touched on topics germane to this litigation . . ." Response [ECF No. 141] at 11. Jennifer Bonjean, who currently represents Plaintiff in this litigation, was not identified as a witness by Plaintiff in his disclosures. Instead, Defendants' argument as to the relevance of Ms. Bonjean's recorded call boils down to the position that "courts in this district routinely hold that calls with an attorney are relevant to the case with that attorney, and the attorney-client privilege does not apply to monitored and recorded calls made during the client's incarceration." Response [ECF No. 141] at 13-14. While Plaintiff

---

[3] Defendants proffer that the vast bulk of Plaintiff's telephone calls produced by IDOC are with his mother and sister – 95.4 hours of the 100 hours of total recordings. Response [ECF No. 141] at 4, n.3.

does not assert any attorney/client privilege as to the recorded call with Ms. Bonjean, Defendants' cited cases are otherwise distinguishable and do not stand for the broader proposition that Defendants advance: essentially, that recorded calls between a plaintiff and his or her attorney are *per se* relevant.

Notably, Defendants make no effort to explain the nature of Plaintiff's relationship with Ms. Bonjean at the time of their call, which occurred before Plaintiff was paroled in 2016 and many years before he was exonerated in 2022. Nor do Defendants provide any support for their belief that the call with Ms. Bonjean is relevant to the current litigation. This distinguishes the rationale advanced by courts in the cases cited by Defendants for allowing discovery of recorded calls by a prisoner with his or her attorney.

In some of Defendants' cited cases, discovery of attorney recorded calls was allowed because the attorneys at issue were fact witnesses in those cases. In *Russell*, for example, the defendants made a sufficient showing to obtain recordings of calls between the plaintiff and his attorney where the plaintiff acknowledged "he spoke with his attorney during his period of incarceration" and "his initial disclosures identify attorney Krejci as a person with knowledge of the criminal proceedings against him and his conversations with Krejci were most certainly about this relevant topic." *Russell*, 2022 WL 294765, at *2–3. Similarly, in *Prince v. Kato*, while the court rejected the plaintiff's assertion of attorney/client privilege as to his recorded prison calls with an attorney because the plaintiff had knowingly communicated with the attorney on a recorded line, the basis for the *relevance* of the calls was that the

attorney, "a public defender appointed to represent [the plaintiff] in post-conviction proceedings," was "a witness in this case who has been deposed." *Id.*, 2020 WL 7698373, at *3 (N.D. Ill. Dec. 28, 2020). While a subsequent decision on an amended subpoena in *Pursley II* observed "Defendants have demonstrated the relevance of the telephone calls between Plaintiff and his attorneys" because "[a]ttorney-client communications are likely to be relevant and probative," the court also noted "the attorneys with whom Plaintiff had the recorded phone calls were listed as witnesses by Plaintiff in his Rule 26(a)(1) disclosures." *Pursley v. City of Rockford*, 2020 WL 7260797, at *3 (N.D. Ill. Dec. 10, 2020) ("*Pursley II*"). By contrast, Ms. Bonjean was not identified as a witness in Plaintiff's initial disclosures, has not been deposed in this case to the Court's knowledge, and Plaintiff did not state he had relevant discussions with Ms. Bonjean while he was incarcerated in the discovery responses that Defendants attached to their Response.[4]

Defendants also cite *Simon v. Northwestern University*. In *Simon*, the court quashed an overly broad subpoena for all of plaintiff's recorded calls during a fifteen-year period of wrongful incarceration but also rejected the plaintiff's assertion of attorney/client privilege over recorded calls with two investigators that worked with

---

[4] Defendants other cited cases do not address the relevance issue. *See Velez*, 2021 WL 3231726, at *1–2 (subpoena did not request any attorney calls; instead, "the City requested recordings of calls between plaintiff and his family"); *Pursley*, 2020 WL 1443827, at *5 (N.D. Ill. Mar. 24, 2020), *opinion adopted*, 2020 WL 4815946 (N.D. Ill. Aug. 19, 2020) (plaintiff waived attorney/client privilege as to prison calls with his attorneys that he knew were recorded, but court otherwise granted motion to quash overly broad subpoena for all of plaintiff's calls while incarcerated).

plaintiff's attorney, finding plaintiff waived any privilege because he knew the calls were recorded. *Id.*, 2017 WL 66818, at *6 (N.D. Ill. Jan. 6, 2017). The court went on to note the plaintiff "does not even suggest that these calls (if they exist) would not be relevant to this litigation" and concluded "a more narrowed request limited to Simon's counsel and the Investigators is appropriate, considering Simon's lack of privacy interest in these calls and the likely relevance and potential highly probative value of these calls." *Id.* In the Court's view, the finding of likely relevance in *Simon* as to the plaintiff's recorded calls with his attorney and investigators is specific to the unique facts in that case.

Here, Defendants do not identify circumstances similar to those in *Simon* that might support Defendants' position that the call with Ms. Bonjean is likely to be relevant. Defendants seek a single recorded call with Ms. Bonjean that was made many years before Plaintiff was exonerated or this litigation commenced. As Plaintiff notes, the current litigation was filed by Plaintiff in 2023 and Defendants do not provide any explanation why a phone call with Ms. Bonjean sometime in 2015-2016 is likely to contain relevant information. Reply [ECF No. 143] at 8 n.3. For all these reasons, Defendants fail to offer more than speculation that a call with Ms. Bonjean made approximately seven years before this litigation commenced is likely to contain relevant information. The Court declines to guess what Plaintiff and Ms. Bonjean may have discussed during that call and therefore concludes Defendants have not demonstrated the relevance of Plaintiff's call with Jennifer Bonjean.

Finally, turning to the remaining two individuals, Plaintiff's mother, Blanca Gonzalez, and sister, Blanca Gonzalez, Defendants argue they are both disclosed witnesses listed in Plaintiff's Rule 26 disclosures as having "information about Plaintiff's innocence and his damages." Response [ECF No. 141] at 11; *see also* [ECF No. 141-3] at 9. Plaintiff does not dispute that he identified his mother and his sister as having relevant information.

Defendants also point to Plaintiff's answers to interrogatories. In response to an interrogatory asking Plaintiff to identify communications during his incarceration about his criminal case and his damages in this litigation, Plaintiff stated that he "generally recalls speaking to family, friends and lawyers, professing his innocence" over the telephone "but does not recall discussing specific details about his case over the phone." [ECF No. 141-4] at 14-15. Plaintiff also answered another interrogatory asking him to identify any communications he had regarding his criminal case, incarceration, and his damages by stating "Plaintiff has spoken to family members and friends regarding his wrongful conviction but cannot recall specific instances." *Id.* at 19-20. Defendants say these "responses are enough to deem conversations with those identified individuals relevant." Response [ECF No. 141] at 12.

The Court agrees. Plaintiff's identification of his mother and sister as witnesses with relevant information about his innocence and his damages, as well as Plaintiff's interrogatory responses confirming that he spoke on the phone to family members while incarcerated about his innocence and more generally that he spoke to family members regarding his wrongful conviction, is sufficient to push Defendants'

request for these telephone calls with Plaintiff's mother and sister beyond mere speculation that they are likely to have relevant information on these topics. *See Russell*, 2022 WL 294765, at *3 (". . . Russell's identification of these individuals as people who possess discoverable information indicates that his recorded conversations with them are likely relevant" as did plaintiff's acknowledgment "in his interrogatory responses that he has discussed matters related to his claims with these family members. Although he did not specify when and through what channel those conversations took place, this admission still weighs in favor of disclosure.").

Plaintiff characterizes his interrogatory responses as stating "he did not speak about the case 'over the phone'," but the Court does not interpret the responses this way. Reply [ECF No. 143] at 5-6. Plaintiff did not state that he never spoke about his case over the phone. Rather, Plaintiff acknowledged he spoke with family over the phone and recalls "professing his innocence" although he did not recall discussing specific details of his case.

Courts have found an appropriate balancing of relevance and privacy interests where defendants targeted a subpoena "to calls with family members that are likely to contain relevant information." *Rodriguez*, 2021 WL 2206164, at *1–3. For instance, where a plaintiff identified specific family members as potential witnesses with knowledge of the plaintiff's damages and criminal proceedings in pretrial disclosures, that was sufficient to surpass the threshold of speculation that calls with those family members would contain relevant information. *Id.* ("Plaintiff listed his mother and sisters as potential witnesses in his initial disclosures, stating they had knowledge of

'his damages and the impact his wrongful prosecution and conviction had on Mr. Rodriguez and his family, as well as knowledge of his criminal proceedings.' Plaintiff himself has listed these individuals as people with information is relevant to his case, which qualifies as an indication that the recordings would probably contain relevant information.").  Given Plaintiff's identification of his mother and daughter as having relevant information about his damages, Defendants have offered more than speculation that Plaintiff's recorded calls with those individuals may have addressed issues relevant to his damages claim. *See Russell*, 2022 WL 294765, at *2–3; *see also Velez*, 2021 WL 3231726, at *2 ("Other phone calls certainly bear on the plaintiff's relationships with his wife, the mother of his daughter, and his daughter . . . So, clearly, the calls are relevant – not merely speculative – as plaintiff would have it – to the issue of damages and beyond that.")

Plaintiff says "all recorded phone calls with disclosed witnesses" are not necessarily discoverable, arguing Defendants merely speculate that calls with his family that were made twenty years into his sentence would address relevant topics. Motion [ECF No. 135] at 9-10 (citing *In re Watts Coordinated Pretrial Proc.*, 2024 WL 3470596, at *10–11); Reply [ECF No. 143] at 7-8. Defendants respond that there is more than mere speculation here that Plaintiff's calls with his family members could be relevant, given Plaintiff's discovery responses and disclosure of his mother and sister as witnesses with likely knowledge. Response [ECF No. 141] at 10-14. Defendants also say Plaintiff's reliance on *In re Watts* is misplaced because while the court in that case did not permit discovery of recorded phone calls made to certain

disclosed witnesses, the court's reasoning centered on the fact that those calls took place during subsequent unrelated incarcerations many years after the challenged wrongful incarceration. Response [ECF No. 141] at 10.

The Court agrees *In re Watts* does not support Plaintiff's position that his calls with his mother and sister are not relevant despite his disclosure of them as knowledgeable witnesses. Unlike the calls sought in *In re Watts*, which occurred during subsequent unrelated incarcerations many years after the challenged convictions, the calls Defendants seek here were made while Plaintiff was still in prison for the challenged wrongful incarceration and were made to family members that Plaintiff identified as witnesses with likely knowledge of his damages due to that same incarceration. That the calls occurred well into Plaintiff's time of incarceration does not diminish the potential relevance of the calls. If anything, it increases the relevance given the time period of which Plaintiff is seeking damages. "[C]ourts in this district have permitted discovery of IDOC recordings where evidence already in hand is sufficient to show that certain recordings (e.g., with particular persons and/or during specific time periods) 'probably' contain relevant information and the subpoenas are narrowly tailored to seek only that subset of recordings." *In re Watts*, 2024 WL 3470596, at *6 (internal citations omitted).[5]

---

[5] In his Reply, Plaintiff says Defendants reference irrelevant facts from *In re Watts* about a different defendant than Plaintiff had referenced. Reply [ECF No. 143] at 7 n.3. Plaintiff says he relies on the *In Re Watts* court's reasoning about two other defendants (Bobby Coleman and Clifford Roberts). *Id.* The facts with respect to Coleman and Roberts, however, do not support Plaintiff's position. Even as to those defendants, the recorded calls were made during subsequent unrelated incarcerations – and the fact that the calls were so removed in time from the challenged incarceration remained a primary reason the court concluded the defendants had not demonstrated relevance. *See id.*, at *7-9 ("Given that these calls occurred

Finally, Plaintiff contends that phone calls with his family members will not rebut what Plaintiff says is the undisputed fact that "his wrongful conviction . . .resulted in his inability to watch his children grow up and being separated from his family." Motion [ECF No. 135] at 10-11. While Plaintiff ultimately might be correct about the significance of the recorded calls, Plaintiff has nevertheless identified his mother and sister as having knowledge of his damages resulting from his incarceration and Defendants are entitled to discover Plaintiff's conversations with his mother and sister that could pertain to that topic. For that reason, the Court (as have other courts in this district) "declines to broadly declare all recorded calls that bear to some degree on a plaintiff's emotional distress and other damages from incarceration to be non-discoverable." *See In re Watts*, 2024 WL 3470596, at *6–7.[6]

---

between nine and nineteen years after Roberts' incarceration in the Watts-related case (while incarcerated for unrelated offenses), the Court is not persuaded that the calls between 2013 and 2023 are probably relevant to his damages from the incarceration in 2003 and 2004."); *id.* at 10-11 (explaining challenged wrongful incarceration for Coleman was "February 18, 2005 until June 10, 2005" but "Defendants seek to listen to 10 calls that Coleman placed while incarcerated" in 2011 including "to Erika Hill, a person Coleman identified as having 'knowledge of Plaintiff's damages'" and reasoning "[w]hile Coleman likely spoke with Hill at some point about the damages from the wrongful conviction and incarceration since he identified her as a possible damages witness, the Court has no basis to find it probable that these discussions will be found within the five calls with Hill in 2011"). By contrast, the calls sought by Defendants here were made during Plaintiff's challenged incarceration.

[6] Defendants also say Plaintiff's letters to his family during his incarceration, which were produced, show he communicated with these individuals about relevant topics. Response [ECF No. 141] at 12. For this reason, Defendants say "it is reasonable to infer that [Plaintiff] also verbally communicated about these same issues with these same witnesses." *Id.* In his Reply, Plaintiff objects that Defendants do not provide any support for their characterization of Plaintiff's letters. Reply [ECF No. 143] at 4-5. The Court agrees with Plaintiff on this point. As Defendants rely solely on attorney characterization of Plaintiff's correspondence, the Court does not rely on this argument in deciding this Motion.

For all these reasons, the Court concludes Defendants have established the relevance of Plaintiff's recorded phone calls with his mother and sister but finds Defendants have not established the relevance of the recorded phone calls with Plaintiff's son, Nathan Gonzalez, or the phone call with Plaintiff's current attorney, Jennifer Bonjean.

### b. Burden and Proportionality of Request for Recorded Calls with Plaintiff's Mother and Sister.

"Even when recordings probably contain relevant information, discovery of them is not automatic. Under Rule 26, discovery must be proportional to the needs of the case considering (among other factors) the importance of the information sought to the issues in the case and whether the burden outweighs the likely benefit." *In re Watts*, 2024 WL 3470596, at *6. Plaintiff argues the subpoena will impose an undue burden on him and his counsel that is not proportionate to the needs of the case, particularly given what Plaintiff says is the "speculative relevance" of the calls sought in the subpoena. Motion [ECF No. 135] at 11-12; Reply [ECF No. 143] at 9-11. In his Motion, Plaintiff says it will take "hundreds and hundreds of hours" for Plaintiff's counsel to translate from Spanish and review over 500 calls. Motion [ECF No. 135] at 12. Plaintiff maintains the same burden argument in his Reply notwithstanding that Defendants argue the number of calls to be reviewed is reduced to 250. Reply [ECF No. 143] at 9-11.

Defendants first argue that Plaintiff's burden is irrelevant because Plaintiff is not responding to the subpoena and Rule 45(d)(1) only directs the Court to consider the burden on the subpoena recipient. Response [ECF No. 141] at 14. Although the

language of Rule 45(d)(1) does refer to the need to "to avoid imposing undue burden or expense on a person subject to the subpoena," Fed. R. Civ. P. 45(d)(1), courts have nonetheless considered a party's burden in analyzing cases like these to determine whether a subpoena for recorded prison phone calls is proportionate to the needs of the case. *See In re Watts*, 2024 WL 3470596, at *5 (". . . the Court agrees that there is a burden imposed on each plaintiff from the need of his counsel to divert time and resources to review the calls, and so considers this as part of its analysis. Defendants' suggestion that Plaintiffs can avoid this burden by opting not to listen to calls rings hollow given counsel's obligations to their clients.") (citing *McClendon v. City of Chicago*, 345 F.R.D. 322, 327 (N.D. Ill. 2024).

Defendants also note Plaintiff's counsel offered to review the calls for relevance before producing them, suggesting the burden of such review is not as substantial as Plaintiff now contends. Response [ECF No. 141] at 14 n.6. That makes some sense. Plaintiff does not address this argument in his Reply.

Finally, Defendants say the time it will take Plaintiff's counsel to review approximately 100 hours of phone calls is not disproportionate to the needs of the case in light of the overall scope of damages sought. Response [ECF No.141] at 15. And Plaintiff was a participant in all the calls, of course, which may assist Plaintiff's counsel in identifying calls with potentially relevant information, as Defendants argue. *Id.* Ultimately, the Court is not persuaded that the burden on Plaintiff to review the recorded calls renders the subpoena wholly disproportionate to the needs of this case in which Plaintiff will be seeking millions of dollars in damages from

Defendants. Plaintiff does not satisfactorily explain why it would be unduly burdensome to review an estimated 100 hours of telephone calls that likely are relevant to the case he will put on at trial about the serious damages he suffered from being incarcerated for 23 years, the resulting harm to him and to his relationships with close family members, and his professed innocence. In the Court's view, that would be somewhat burdensome but not unduly so under the circumstances.

For all the above reasons, the Court grants Plaintiff's Motion to Quash Defendants' Subpoena Seeking Plaintiff's Recorded Calls [ECF No. 135] with respect to Illinois Department of Corrections recorded telephone calls from 2015-2016 between Plaintiff and Sophie Serrano, Kavon Dawals, Nathan Gonzalez, and Jennifer Bonjean. The Court denies Plaintiff's Motion to Quash with respect to Illinois Department of Corrections recorded telephone calls from 2015-2016 between Plaintiff and Blanca Gonzalez (his mother) and Blanca Gonzalez (his sister).

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: October 15, 2025